IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FREDRICO L. ROBINSON, #190306, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:16-CV-965-WKW |
| | ) | |
| AGGIE BAGGOT, a.k.a. Angie Baggett, and | ) | |
| M. HUMPHRY, a.k.a. Melanie Humphrey,[1] | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[2]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Fredrico L. Robinson, a state inmate, challenging the constitutionality of actions related to his classification as a restricted offender.  Doc. 1 at 2–3.  Robinson names Angie Baggett, the Assistant Director of Classification for the Alabama Department of Corrections, and Melanie Humphrey, a Classification Supervisor assigned to Draper Correctional Facility at the time relevant to the complaint, as defendants.  Robinson seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights.  Doc. 1 at 4.

---

[1] The defendants assert that Angie Baggett and Melanie Humphrey are the defendants' true names and the plaintiff does not dispute this. For purposes of this Recommendation, the court will use the defendants' correct names.

[2] All cited documents and attendant page numbers referenced herein are those assigned by this court in the docketing process.

The defendants filed a special report, supplements thereto and supporting evidentiary materials addressing the claims for relief presented by Robinson. In these documents, the defendants deny violating Robinson's constitutional rights. The court therefore issued orders directing Robinson to file responses to the defendants' reports, to include affidavits, sworn statements or other evidentiary materials.  Doc. 18 at 2; Doc. 24 at 2. These orders cautioned Robinson that unless "**sufficient legal cause**" is shown within fifteen days of entry of this order "**why such action should not be undertaken**, . . . the court may at any time [after expiration of the time for his filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 18 at 3; Doc. 24 at 3. Robinson filed responses accompanied by supporting evidentiary materials, including affidavits, to the defendants' reports.  Doc. 20; Doc. 27.

Pursuant to the above described orders, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the complaint and the responses filed by Robinson, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

2

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed.R.Civ.P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that the moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same

purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice, there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant; materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

*Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and

the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough review of all the evidence which would be admissible at trial, the court finds that Robinson has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  ABSOLUTE IMMUNITY

Robinson requests that the court grant any and all relief available to him. Doc. 1 at 4. To the extent this request can be construed to seek monetary damages from the defendants in their official capacities, they are immune from suit. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in [her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, defendants Baggett and Humphrey are entitled to sovereign immunity under the Eleventh Amendment for those claims seeking monetary relief from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## IV.  RELEVANT FACTS[3]

On December 29, 1993, a male passenger in a vehicle driven by the murder victim in Robinson's case "gestured to two black males, indicating he wished to buy some crack cocaine." Doc. 12-1 at 7; Doc. 20-1 at 2.  Robinson and another black male approached the vehicle, at which time the passenger "asked for a twenty dollar 'rock'." Doc. 12-1 at 7; Doc. 20-1 at 2.  As these men approached, "Robinson pulled out a large revolver and told [the occupants of the automobile,] 'this is a robbery give me your twenty dollars and take your necklace off.'" Doc. 12-1 at 7; Doc. 20-1 at 2. The victim accelerated the vehicle "in an attempt to get away. Robinson fired two shots at the vehicle, one bullet struck the right rear quarter panel of [the] vehicle and the other one went through the rear window glass, then struck [the victim] in the back of the head. Robinson and his companion then left the scene." Doc. 12-1 at 7; Doc. 20-1 at 2. The bullet wound to the victim's head caused her death.

On September 20, 1996, a jury in the Circuit Court of Etowah County, Alabama convicted Robinson of murder, a lesser included offense of capital murder as charged in count two of the indictment. Doc. 27-2 at 1. The trial court sentenced Robinson to life imprisonment for this offense. Doc. 27-2 at 1.

## V.  DISCUSSION OF CLAIMS

### A.  False Information

---

[3]The facts are gleaned from the documents filed by the plaintiff, including the pre-sentence report submitted by both the plaintiff and the defendants, Doc. 20-1 and Doc. 12-1, respectively.

Robinson complains that the defendants relied on false information—*i.e.*, that a robbery was committed during the murder—to classify him as a restricted offender. Doc. 1 at 3. In support of this claim, Robinson asserts that no robbery occurred; he contends that the PSI indicates that he did not complete a theft of property as nothing was actually taken from the occupants of the vehicle at the time of the murder. Doc. 20 at 2. However, Robinson's characterization of his actions as attempted robbery, rather than robbery, is contrary to Alabama law which directs that when an individual uses a deadly weapon while attempting to commit a theft he has committed a robbery regardless of whether the theft of property actually occurs. *Watkins v. State of Alabama*, 941 So.2d 343, 344 (Ala.Crim.App. 2006) (quoting *Petty v. State*, 414 So.2d 182, 183 (Ala.Crim.App. 1982) ("'Because the definition of robbery has been enlarged and expanded by the [1975] criminal code, the former offense of assault with intent to rob has been merged into the present offense of robbery. For this same reason the former crime of attempted robbery now constitutes robbery. Section 13A-8-43(a) adds a definition that extends robbery to include conduct which occurs in an attempt to commit a theft[.] Section 13A-8-40(b).")); *Casey v. State*, 925 So.2d 1005, 1006 (Ala.Crim.App. 2005) (same); *Marvin v. State*, 407 So.2d 576, 579 (Ala.Crim.App. 1981) (same).

Furthermore, the defendants deny that they relied on false information in classifying Robinson as a restricted offender and contend that the information employed in the classification process is true and correct. Specifically, the defendants maintain that they determined that Robinson should be classified as a restricted offender based on applicable

classification criteria and the details underlying Robinson's murder conviction, the circumstances of which involved his commission of a robbery as defined by Alabama law.[4] Doc. 12-1 at 1−2; Doc. 12-2 at 1; Doc. 17-1 at 1−2; Doc. 17-2 at 1−2; Doc. 23-1 at 1−2; Doc. 23-2 at 1−2.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on admittedly false information to deny a prisoner consideration for parole was arbitrary and capricious treatment which violated the Constitution. The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least

---

[4]The classification criteria direct that an inmate whose offense involves "[k]illing during the commission of a robbery or other crime" may be classified as a restricted offender. Doc. 12-1 at 12. Thus, Robinson's classification as a restricted offender is appropriate whether he committed a robbery as defined by state law or any other "other crime" at the time he killed the victim.

in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Robinson [v. Sellers]*, 691 F.3d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the false information claim now before the court.

The defendants maintain that the information used in the classification process is true and that their reliance on this information to classify Robinson as a restricted offender did not infringe on any of his constitutional rights. There is no admission by the defendants that the information used in determining Robinson's classification status is false, incorrect or erroneous. Also, Robinson has failed to come forward with any evidence which indicates that the defendants knowingly used false information during the classification process.[5]

The undisputed evidence demonstrates that the defendants did not rely on admittedly false information in their decision to classify Robinson as a restricted offender. Instead, the evidence before the court shows that the defendants used correct information regarding the circumstances of Robinson's criminal offense in determining his classification level. Consequently, Robinson is entitled to no relief as a matter of law and

---

[5]Moreover, the law is well-settled that an inmate's mere conclusory assertion regarding the use of false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

entry of summary judgment in favor of the defendants on the false information claim is appropriate.

## B.  Due Process

Insofar as Robinson argues the decision to classify him as a restricted offender deprived  him of due process, Doc. 1 at 3, this claim provides no basis for relief.  The law is well settled that

> there are only two instances when a prisoner may be deprived of a due process liberty interest under § 1983: The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  *Kirby v. Siegelman*, 195 F.3d 1285, 1290−91 (11th Cir. 1999) (quotation omitted) (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

*Morales v. Chertoff*, 212 F. App'x 888, 890 (11th Cir. 2006).

Robinson's due process claim fails to implicate either of these situations because his assigned classification level as a restricted offender is not "so severe that it essentially exceeds the sentence imposed by the court," and the administrative regulations governing classification "do not bestow a benefit vis-a-vis the custody classification, the deprivation of which would result in an 'atypical and significant hardship' on [Robinson]. *See Kirby*, 195 F.3d at 1290-91; *see also Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir.1994) (in the context of a claim based on a classification level, holding that the U.S. Constitution affords no liberty interest in a prisoner's classification status)[.]" *Morales*, 212 F. App'x at 890; *Sandin*, 515 U.S. at 484  (holding that an inmate has no constitutionally protected interest

in the procedure affecting his classification level when the resulting restraint—e.g., placement in a higher security level prison—does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *Kossie v. Crain,* 354 F. App'x. 82, 84 (5th Cir. 2009) (citing *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (holding that "a prisoner does not have a protected liberty interest in his custody classification."); *James v. Reno,* 39 F.Supp.2d 37, 39 (D.D.C. 1999) (finding that an inmate "has no liberty interest in his security classification[.]"); *Meyer v. Reno,* 911 F.Supp. 11, 16 (D.D.C. 1996) (finding "[t]here is no protected liberty interest in obtaining or maintaining a particular security classification.").

Based on the foregoing, Robinson has no constitutionally protected liberty interest in being granted a particular custody classification, and his claim to the contrary is without merit. *Morales*, 212 F. App'x at 890; *Jones v. Diamond,* 594 F.2d 997 (5th Cir. 1979) (holding that convicted state inmates have no due process right to a particular classification status).

As to any contention that the decision to classify him as a restricted offender was arbitrary and unreasonable, Robinson is likewise entitled to no relief.  State officials may not deny or restrict access to less restrictive custody classifications for arbitrary or capricious reasons.  *Hendking v. Smith*, 781 F.2d 850, 852 (11th Cir. 1986) (classification system contains no inherent constitutional invalidity, but becomes constitutionally offensive only if "the regulation is administered maliciously or in bad faith."). Consideration of the details surrounding an inmate's criminal conviction in determining

the inmate's classification level, however, does not implicate the Constitution, as this is rationally related to the legitimate state interest of ensuring that only those inmates best suited for lower classification levels are so placed. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378, 380 (11th Cir. 1991) (holding that "denying [incentive good time] to prisoners based on their criminal record is rationally related to the state's interest in preventing the early release of serious offenders."); *see also Thornton v. Hunt*, 852 F.2d 526, 527 (11th Cir. 1988) (holding that the denial of eligibility for incentive time benefits to inmate who received sentences of over 10 years "is rationally related to the legitimate purpose of preventing the early release of serious offenders [and] does not violate the equal protection clause or due process clause."). Here, the reliance by prison officials on all of the facts underlying Robinson's murder conviction to classify him as a restricted offender does not violate the Constitution, as the circumstances underlying his crime legitimately may be used by prison authorities to determine his security and classification status. Moreover, the fact that Robinson disagrees that he meets the ADOC's classification criteria for restricted offender status does not make the decision arbitrary or capricious, and Robinson has presented no evidence indicating that the defendants engaged in arbitrary or capricious actions by recommending his classification as a restricted offender. *See Thornton*, 852 F.2d at 527.  The court therefore concludes that the nature and circumstances of the murder for which Robinson stands convicted meet the criteria for restricted offender status and his classification as a restricted offender is "not arbitrary and capricious, but reasonable and appropriate." *Hendking*, 781 F.2d at 852.

### C. Cruel and Unusual Punishment

Robinson makes the conclusory allegation that his classification as a restricted offender violated the prohibition against cruel and unusual punishment set forth in the Eighth Amendment. Doc. 1 at 3. In support of this allegation, Robinson alleges that his restricted offender status denies him the benefits afforded by lower classification levels such as placement in less restrictive prison facilities.

The Eighth Amendment proscribes those conditions of confinement which "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Id*. Specifically, the Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). The challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the plaintiff's] future health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotations and citations omitted). Prison conditions which may be "restrictive and even harsh, [ ] are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Rhodes*, 452 at 348.

The decision to classify Robinson as a restricted offender, thereby limiting his access to less restrictive prison facilities, standing alone, does not constitute a violation of

the Eighth Amendment as "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Thus, a prisoner does not have a constitutionally protected right to incarceration in any particular prison, even where the conditions of one prison are "much more disagreeable" than another. *Id*. at 224–26; *Spuck v. Ridge,* 347 F. App'x. 727, 730, (3d Cir. 2009) (holding that "an inmate does not have an inherent constitutional right to determine the place of his confinement, nor does he have a state-created liberty interest which allows him to be incarcerated at an institution of his choosing."). Consequently, the defendants are entitled to summary judgment on this Eighth Amendment claim.

### D.  Lack of a Jury Trial

Robinson next alleges that the defendants' administrative decision to classify him as a restricted offender based on the details underlying his murder conviction violated his Sixth Amendment right to a trial by jury. Doc. 1 at 3.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.  [The Supreme Court has] held that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin,* 515 U.S. 506, 510 (1995) (quotation marks and citation omitted). "The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'" *United States v. Deninno,* 103 F.3d 82,

86 (10th Cir. 1996) (quoting *Austin v. United States,* 509 U.S. 602, 608 (1993)); *see also*

*Hannah v. Larche,* 363 U.S. 420, 440 n.16 (1960) (affirming that Sixth Amendment

protections apply only during criminal proceedings). Robinson's classification as a

restricted offender resulted from an internal administrative decision made by correctional

officials and was not part of a criminal prosecution. Because the classification process

is not a criminal proceeding, the Sixth Amendment is not implicated and summary

judgment is therefore due to be entered in favor of the defendants on the claim that they

denied Robinson a jury trial during the classification process.

## VI.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

On or before **December 19, 2019**, the parties may file objections to this

Recommendation. The parties must specifically identify the factual findings and legal

conclusions contained in the Recommendation to which his objection is made.  Frivolous,

conclusive, or general objections will not be considered by the court.

Failure to file written objections to the proposed factual findings and legal

conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party

from a *de novo* determination by the District Court of these factual findings and legal

conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993)("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 4th day of December, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge